UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CR17DJS(MLM) |
| ) | |
| DEREK ANDREW TAYLOR, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

On February 6, 2008 an Evidentiary Hearing was held on defendant's Motion to Suppress Identification [Doc. 13], Motion to Suppress Statements [Doc. 14] and Motion to Suppress Physical Evidence [Doc. 15]. The government had previously filed a written Response to these Motions [Doc. 16]. At the Hearing, the government presented the testimony of Detective Joe Hayes of the Northeast Missouri Narcotics Task Force. Defendant did not present evidence. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Det. Hayes testified that on 7/11/07 he received a call from the Ralls County 911 Center concerning marijuana plants being grown on the farm of Jason Poage. Det. Hayes contacted Mr. Poage and made arrangements to meet him. Det. Hayes, a State Highway Patrol Investigator and another detective met Mr. Poage who told them he and his girlfriend were picking blackberries on his farm and observed marijuana plants. The

officers went with Mr. Poage to the farm and he showed them the location of the plants.[1] Mr. Poage consented to surveillance on his property. On 7/12/07 Det. Hayes and Highway Patrol Officers returned to the Poage farm and took photographs of the plants and got a GPS location on the plants. On 7/13/07 Highway Patrol Troopers Holman and Berry set up a motion-activated video camera directed towards the plants. The first camera did not work properly and they replaced it. On 8/8/07 the Officers removed the video tape. Upon viewing the tape, Det. Hayes observed a white male wearing a back brace and a baseball cap tending the plants.[2] Det. Hayes was unable at that time to identify the individual shown on the tape. Trooper Berry contacted officers from different agencies and nearby jurisdictions. New London Police Officer John Dean and Hannibal Sergeant John Zerbonia made positive identifications of defendant as the person on the video. Both were familiar with defendant from previous contacts with him.[3]

On 8/14/07 Det. Hayes did a "trash pull" from defendant's residence. He took three bags of trash awaiting pickup from outside the fence surrounding the residence between the fence and the street.[4] Det. Hayes and Captain Forney took the bags to the Task Force

---

[1] The Affidavit in Support of the Search Warrant, which will be described in detail infra, states that Det. Hayes observed approximately "40 well maintained, knee-high marijuana plants growing in a small cleared area." He also observed "2 chest-high marijuana plants" growing in the same general area.

[2] The Affidavit in Support of the Search Warrant, see infra, says Det. Hayes observed the person "mixing what appeared to be fertilizer into a plastic bucket, watering marijuana plants from the mixture in the bucket and then closely examining the plants while holding them in his hand...".

[3] The Affidavit in Support of the Search Warrant, see infra, states Trooper Berry obtained a drivers license photo of defendant and compared it with the video image.

[4] The Affidavit in Support of the Search Warrant, see infra, states 2 of the bags were located inside a white plastic trash container and the third was located right next to the white plastic trash container. It states the bags appeared discarded.

Office and searched them. Det. Hayes found empty plant care packages and a part of a check with the name "Taylor" on it.[5]

On 8/15/07 Det. Hayes presented an Application and Affidavit in Support of a Search Warrant for defendant's residence to Ralls County Judge Mobley. It was reviewed by Ralls County Assistant Prosecuting Attorney Robert Rapp. Det. Hayes was the main affiant and in addition, there were also attached affidavits by Sgt. John Zerbonia and PO John Dean. Det. Hayes' Affidavit describes the property with particularity and lists Det. Hayes' experience and training. It tracks his testimony as set out above. Sgt. Zerbonia's Affidavit states that he viewed the subject in the video and immediately recognized defendant Derek Taylor whom he had arrested previously for assault and possession of controlled substance. PO Dean's Affidavit states that the white male he observed on the surveillance video caring for marijuana plans is defendant Derek Taylor.

Based on this information, Judge Mobley found probable cause and signed a search warrant for defendant's residence on 8/15/07 at 3:50 P.M. The warrant authorizes a search for:

> Controlled substances, (probably marijuana), items used in the manufacture/cultivation of controlled substances, items used in the sales of controlled substances, monies earned from the sales of controlled substances, drug paraphernalia, (or) or any other devices used in an illegal manner.

Det. Hayes stated that when he responded to the residence with approximately 11-12 other officers in at least 2 marked cars, he saw defendant looking out the window. He knocked on the door twice and each time announced "Search Warrant." He felt the investigation was compromised by defendant looking out the window and seeing the

---

[5] The Affidavit in Support of the Search Warrant, see <u>infra</u>, states Det. Hayes recognized common items used in the cultivation of marijuana such as an empty Miracle Gro feeder refill packet, an empty Super Thrive World Champion Plant Activator-Reviver, trans-planter, extra-grower bottle, and a large wad of Saran Wrap.

officers, so he entered the unlocked door.  Some of the officers were wearing police vests with their badges displayed; others were in full police uniform.  When they entered they encountered defendant, his girl friend, 2 children and a dog.  He ordered defendant and his girl friend to get on the ground and control the dog, which they did.

The search produced drug related "how to" materials, gardening tools, marijuana seeds, various paper work, a back brace and a loaded shotgun.  A baseball cap was located in a vehicle.

Defendant was advised of his Miranda rights, stated he wanted a lawyer and made no statements.

On lengthy cross examination, Det. Hayes, who made an in court identification of defendant at the Evidentiary Hearing, was asked about his previous inability to identify the white male on the video.  Det. Hayes had testified at a preliminary hearing in Ralls County that he could not identify the defendant on the video.  Det. Hayes explained that he had previously viewed it on an old television set but the U.S. Attorney's computer made the image considerably clearer.  In addition, by the time of the Evidentiary Hearing in this court, Det. Hayes could more easily recognize the subject's face because he had been around defendant more and was familiar with him from encounters with him.  Det. Hayes arrested defendant and transported him to St. Louis in a 2-3 hour trip during which defendant was in the passenger seat of Det. Hayes' pickup truck and they had general conversation about contacting his attorney when he arrived, defendant giving directions for travel with Highway 40 closed, defendant wanting to call his girl friend about his dog and his not understanding why he was charged in federal court.

Det. Hayes was also cross examined about the fact that he had previously executed a search warrant at defendant's residence and had noted the address at that time as 412

West Fourth Street and the occupants as Michael and Cam Welch instead of 400 (A) West Fourth Street as in the present Affidavit. Det. Hayes testified he had checked with City Hall and "Marilyn" had told him they had had a similar problem with the address. Det. Hayes was emphatic that the house searched - - whether called 412 or 400(A) - - was the same two-story red barn-style home with white trim, having a door facing south and a door facing north and a chain link fence surrounding it on West Fourth Street in New London in Ralls County, Missouri.

## CONCLUSIONS OF LAW

1.  **STATEMENTS**

Defendant made no statements. After he was arrested following the execution of the Search Warrant he was advised of his <u>Miranda</u> rights. He asked to speak to his attorney. He was therefore not questioned and he made no statements.

This Motion can hardly be said to have been filed in compliance with the court's Order Concerning Pretrial Motions which requires that defendant's counsel confer with counsel for the government and that defendant's counsel has a good faith belief that the evidence exists, that is, that defendant made statements. Although the Motion recites that counsel conferred and had a good faith belief that statements exist, if the required conference had taken place, counsel for the government would have told defendant's counsel that defendant made no statements.

2.  **IDENTIFICATION**

This Motion asks the court to suppress all testimony concerning out-of-court identifications of defendant as inherently suggestive and all in-court identifications of defendant as fatally tainted by the out-of-court identifications. The Motion is without merit.

Det. Hayes testified that he looked at the surveillance video, was unable to identify the subject tending the marijuana plants and therefore officers from other nearby jurisdictions were called to see if they could identify the subject. Sgt. Zerbonia from Hannibal and PO Dean from New London positively identified the defendant from their previous contacts with him.

In ruling on the admissibility of an identification, the court is required to conduct a two-step analysis. The first step is to determine whether the procedure used for the identification is unduly suggestive. The second is to determine whether, under the totality of the circumstances, the procedure created "a very substantial likelihood of irreparable misidentification." See Manson v. Brathwaite, 432 U.S. 98, 116 (1977); Neil v. Biggers, 409 U.S. 188, 199-200 (1972); see also Ford v. Armontrout, 916 F.2d 457 (8th Cir. 1990), cert. denied, 499 U.S. 964 (1991); Hulsey v. Sargent, 821 F.2d 469, 473 (8th Cir.), cert. denied, 484 U.S. 930 (1987); United States v. Briley, 726 F.2d 1301, 1306-07 (8th Cir. 1984). The burden is on the defendant to show that the identification should be excluded.

In this case there was nothing even remotely suggestive about the identifications by Sgt. Zerbonia and PO Dean and they should not be suppressed.

Where, as here, there has been no showing of impermissible suggestiveness, it is not necessary to move on to the second inquiry, that of reliability. See, e.g., United States v. Mays, 822 F.2d 793, 798 (8th Cir. 1987). The reliability of identification testimony is a question which may be presented to the jury at trial for determination. See United States v. Schultz, 698 F.2d 365, 368 (8th Cir. 1983). "Generally, if identification procedures were not unduly suggestive, questions as to the reliability of a proposed in-court identification effect only the identification's weight not its admissibility." United States v. Matthews, 20

F.3d 538, 547 (2nd Cir. 1994). The jury will evaluate the reliability of Sgt. Zerbonia's and PO Dean's in-court identification at trial.

Det. Hayes testified at an earlier court proceeding that he was unable to identify defendant, however at the Evidentiary Hearing in this court he pointed defendant out as the subject in the surveillance video. When questioned about this apparent inconsistency, Det. Hayes said that at the time of the previous identification he was not particularly familiar with defendant. However, since then he had transported defendant in the front seat of his personal vehicle for two to three hours and had gotten to know him. In addition, he said the television on which he first viewed the surveillance video was not clear but the computer in the United States Attorney's office was considerably clearer. Thus, he was able to point out defendant in court. Even if pretrial procedures have been unduly suggestive (which in this case they were not) a court may nevertheless admit in-court identification testimony if the court determines it to be independently reliable. United States v. Wong, 40 F.3d 1347, 1359 (2nd Cir. 1994). The linchpin of admissibility is reliability. Id. citing Manson v. Brathwaite, 432 U.S. 98, 106 n.9 (1977). Reliability of the identification is "simply a question for the jury." Wong, 40 F.3d at 1359 citing Jarrett v. Headley, 802 F.2d 34, 42 (2nd Cir. 1986). Det. Hayes' identification should not be suppressed.

3. **SEARCH OF DEFENDANT'S TRASH**

Det. Hayes testified he did a "trash pull" from outside the fence at defendant's residence. Warrantless searches and seizures of abandoned property do not violate the Fourth Amendment. United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994). Whether a person intends to abandon property may be inferred from words spoken, acts done and other objective facts, and all relevant circumstances at the time of alleged abandonment should be considered. United States v. Hoey, 983 F.2d 890, 892 (8th Cir. 1993). The issue

is not abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished a reasonable expectation of privacy so that a search and seizure is valid. Id. Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Ruiz, 935 F.2d 982, 984-85 (8th Cir. 1991). See also, United States v. Scott, 975 F.2d 927, 930 (1st Cir. 1992) (reasonable expectation of privacy relinquished when defendant placed shredded tax documents in garbage for third-party disposal because other methods of disposal which would have insured privacy not exercised), cert. denied, 113 S.Ct. 1877 (1993).

"Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997) cert. denied, 522 U.S. 1061 (1998). "Two important factors are denial of ownership and physical relinquishment of the property" Id., quoting United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986), considering only the information available to the officers at the time of the search, Tugwell, 125 F.3d at 602. Here, two of the trash bags were in a plastic container and one right next to the container, all awaiting trash pickup. They were next to the street, outside the fence which surrounds the residence. There is no question that the trash in the bags was abandoned.

While the government bears the burden to demonstrate an exception to the warrant requirement where police conduct a warrantless search of a residence and areas within the residence's curtilage, the defendant first bears the burden to demonstrate that he has a legitimate expectation of privacy in the area searched. Florida v. Riley, 488 U.S. 445, 455 (1989) (O'Connor, J. , concurring); United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002). That burden is met by showing both a subjective expectation of privacy and that

the expectation is objectively reasonable; that is, one that society is willing to accept." Mendoza, 281 F.3d at 715 (quoting United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)); see Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In the present case the trash was clearly outside the curtilage and defendant has made no showing that he had a legitimate expectation of privacy in the area searched. The "trash pull" was lawful and any evidence obtained should not be suppressed.

4. SEARCH OF DEFENDANT'S RESIDENCE

The evidence seized from defendant's residence was obtained pursuant to a Search Warrant issued by Judge Mobley of the Ralls County Circuit Court.

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. Gates, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." Gates, 462 U.S. at

238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. Gates, 462 U.S. at 236. The affidavit presented in the instant case clearly contains the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at defendant's residence. The facts set out above show that there was a substantial basis for concluding that probable cause existed.

In addition to Det. Hayes' Affidavit the Application was supported by Affidavits from Sgt. Zerbonia and PO Dean. See United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (when issuing judge relies solely on supporting affidavit to issue warrant "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause"), quoting United States v. Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995); United States v. Wells, 347 F.3d 280, 286 (8th Cir. 2004) (when issuing court relies solely on an affidavit to determine whether probable cause exists, only the information found within the four corners of the affidavit may be considered by reviewing court).

The court has reviewed the three Affidavits in detail and incorporates the Application and Affidavits by reference as if they were fully set out herein. The court finds that there is no question that there was probable cause for the search of defendant's residence.[6]

---

[6] The lengthy cross examination about the discrepancies in the address of the residence is nothing but a red herring. Det. Hayes testified that the red barn-style building searched was the same red barn-style building he searched before. City Hall confirmed there had been prior confusion about the address. This argument, whatever its purpose, is without merit.

Defendant also challenges the manner of execution of the Warrant arguing the officers did not announce their identity and authority. Det. Hayes testified that as he approached defendant's residence to execute the Search Warrant, he saw defendant looking out the window at him and the other officers, all in police attire. He knocked on the door twice and each time announced "Search Warrant." Therefore, defendant's argument is without merit.

18 U.S.C. § 3109 provides in part that an officer may break into a house to execute a search warrant "if, after notice of his authority and purpose, he is refused admittance." The defendant bears the burden of establishing a prima facie case when asserting a § 3109 claim. United States v. Schenk, 983 F.2d 876, 878 (8th Cir. 1993) (quoting United States v. Mueller, 902 F.2d 336, 344 (5th Cir. 1990) (citation omitted)); United States v. DiCesare, 765 F.2d 890, 896 (9th Cir. 1985). There is no hard-and-fast time limit that the officers must wait after announcing their presence and purpose before entering the residence. Schenk, 983 F.2d at 879; United States v. Streeter, 907 F.2d 781, 789 (8th Cir. 1990), overruled on other grounds, United States v. Wise, 976 F.2d 393, 401 (8th Cir. 1992) (en banc). However, a "failure to answer a knock and announcement has long been equated with a refusal to admit the search party and a justification for forcible entry." United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir. 1991), quoted with approval in Schenk, 983 F.2d at 879.

Although there was no testimony about exactly how long he waited before entry, see United States v. Banks, 540 U.S. 31, 38 (2003) (holding that waiting 15 - 20 seconds after knocking and announcing their presence violated neither the Fourth Amendment nor 18 U.S.C. § 3109), Det. Hayes testified he saw defendant looking at him, knocked and announced twice and felt the entry was compromised. The court finds that under the

totality of the circumstances there was neither a violation of the Fourth Amendment nor 18 U.S.C. § 3109 and the evidence should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Motion of Defendant to Suppress Identification be **DENIED**. [Doc. 13]

**IT IS FURTHER RECOMMENDED** that the Motion of Defendant to Suppress Statements be **DENIED**. [Doc. 14]

**IT IS FURTHER RECOMMENDED** that the Motion of Defendant to Suppress Physical Evidence be **DENIED**. [Doc. 15]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

<u>/s/Mary Ann L. Medler</u>
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   21st   day of February, 2008.